Our final case for today is United States v. Cisneros. Ms. Gambino. Good afternoon, Judge Wood, Judge Posner, and Judge Robner. I am here on behalf of Alan Cisneros because the District Court in his case made three critical errors and those errors resulted in more than doubling the sentence that Mr. Cisneros was looking at. Before I start talking about his argument that he was trying to clear his head and had no intention of remaining in Mexico, the government states that he was flying on a Mexican passport and of course a one-way ticket. Now, was he a citizen of Mexico, in which case he had some ties there, or was he flying on a fraudulent passport in an attempt to conceal his identity? And I'd like you to clear something else up. Was he actually on the plane? One place it said he was on the plane, another place it said, you know, they caught him at the airport. Your Honor, first of all, Mr. Cisneros was not a United States citizen. He was flying on the only passport that he owned. Was he legally in the United States? I don't know the answer to that question, Your Honor. See, I'll tell you why I'm interested in that, following up a little on what Judge Rovner was saying. We have this application note about avoiding or fleeing from arrest is not enough to put you over the line for obstruction. But there are two things. Even if he was legally in the United States, if he was a Mexican passport holder, a citizen of Mexico, and he gets back to Mexico, he doesn't have to be returned to the United States. He can stay there as long as he wants to because the U.S.-Mexico Extradition Treaty allows each country to exercise discretion over extradition requests of its own nationals. So Mexico would have to extradite a Guatemalan to the United States, but they don't have to extradite a Mexican citizen any more than we have to extradite an American citizen to Mexico. So going to the country of his residence is a much more profound level of fleeing. It's actually moving yourself entirely outside the reach of the American authorities, whereas some guy who just runs down the street and jumps over a few fences and is fleeing from arrest is in nothing like that situation. So I think fleeing to another country certainly, in general, ought to count as obstruction and, of course, in his case, attempting to flee to another country. Well, Your Honor, even worse, of course, if you're illegal because he doesn't even have any right to come back to the United States in that instance. I believe that Mr. Cisneros' situation is that he's one of these unfortunate souls caught in the middle who has been in the United States since he was a child, had not had his status regularized completely or at all. That was my understanding, and so that's why once he gets off the airplane in Mexico City or wherever it is he was trying to fly to, he can't even come back to the United States. And he does so, he leaves under circumstances that it seems to me the district court was well within bounds to consider fleeing from imminent arrest. Their whole conversation is obviously pointing that way or the district judge could so infer. Well, Your Honor, I think there's some countervailing factors that have to be added into the mix here. If it were exactly as you've said and that he was purely an illegal resident and he was attempting to go back to his home and all of that, I would agree with you. But those are not the facts for Mr. Cisneros because not only did he consider this his home, but he is married to a legal resident here. He has a child who was born here. His mother and immediate family are also here in the United States. No, I understand that, but you probably know we see a never-ending flow of cases where people are in exactly his position. And if he doesn't himself have the right to come back here, a visa of some type, he can't do it. So whether he knows anybody in Mexico or not is sort of beside the point. He's not even allowed to come back without the permission of the Attorney General. Well, Your Honor, because the record is not clear on that point, whether he was a permanent resident or whether he was in process or something of that nature, if that's the turning point of your argument, I'd be happy to investigate and supplement. No, see, I don't think it makes any difference because even if he's a legal resident here, if he holds a Mexican passport, they don't have to extradite him. If he's illegal, there's just sort of an extra reason why he doesn't have to come back. Well, the point of the matter with Mr. Cisneros... Why do you think he went back to Mexico or wanted to or tried to go back to Mexico? Well, Your Honor, I think I would take him at his word. What had happened to him was a series of events over two days that were very difficult. First of all, he is detained but not arrested. And the agents make it very clear to him that they don't want to have to charge him and they want him to cooperate, which he agrees to do. But they lie to him and they tell him that they're county officials and they give him a false police report so that he can have some evidence for the people that he might owe the money for the drugs to that he'd been legitimately arrested. Arrested for marijuana, which had nothing to do with anything in the case. So then he does cooperate with them. They tell him to come back to this meeting place on the next day. At which point they say, oh no, by the way, we're not county officials, we're federal officials and we've been investigating you and all of your friends and associates for the past year. And we want you to tell us more than what you told us yesterday, which he does. But not only that, we want you to proactively cooperate, meaning wear a wire against all of these people that you associate with. Now that brings it to a whole different level for him. Because telling the police about what he's doing or telling even about what the rest are doing isn't a problem for him as long as nobody knows what he's done. But taking the risk of cooperating against somebody when you're involved with individuals who will threaten your life. So suppose he'd say, in light of what they just told him, he wasn't going to cooperate with them. What would happen next? Well, if in fact he had said, no, I don't want to cooperate, they would have arrested him then. Right. So he's fleeing arrest, basically. Well, he doesn't know that. Well, of course he is. He is basically... He doesn't know what... They've told him exactly what they want from him. If he says no, they arrest him, as you said. So he goes to Mexico to avoid being arrested. Well, he tries to go to Mexico and what he said... What he said to them was, not no. What he said to them was, this is a very serious thing you're asking me to do. I need an opportunity to think about it. And he has all of his family and everything about his life... Well, they're not giving him the opportunity to think about it. So he has to make a spur-of-the-moment decision, right? So he decides to flee. No, no, no. They did agree to give him an opportunity to think about it. Well, he fled anyway. And the next day, he said he had to get his mind clear. He wanted to think about it in a place where he wasn't around all of the people... No, that's too facile. You don't have to go to Mexico if you want to be able to think quietly without being surrounded by people. Well, the circumstances of his attempted flight were that of a spur-of-the-moment decision. Because he took very few things. He took only the money with him that they had just given back to him. That was $1,800, right? Right. Which is not going to do you a whole lot of good in Mexico for very long. I mean, it certainly would do you longer than it would here. But the point of the matter is, it's not the sort of case where it does not rise to the level, as in other cases in this district, this idea that's been set out of Flight Plus, because he didn't take any of those prior contemplative steps that all these other individuals did in terms of changing identity, using false passport... Well, those are facts, though. But the obstruction enhancement is a finding of fact by the district judge. And the district judge here comes to the conclusion, based on this sequence that we've all been talking about, that he means to get away. He's doing it intentionally. He's doing it to avoid arrest, with the purpose of avoiding arrest. And he's removing himself very significantly from the reach of U.S. law enforcement. And so it seems to me entirely rational for the district judge to draw the conclusion that this was obstruction, as 3C uses the term. Well, 3C, the application note says, flight to avoid arrest is not obstruction. But I'm saying that there's flight and flight. There's the guy who's running down the street, flight. And there's the person who goes to the moon, flight. And he's closer to the moon than he is to running down the street. And it's only most of the time, anyway, as we've emphasized in other cases, typically. Well, typically where you've affirmed the obstruction, it's been when the person's actually left, when the person has taken concrete steps, as in the case of Porter, to change his identity, move his family, sell assets, all that sort of thing. And you haven't found, in a case like this, where it's a spur-of-the-moment decision and it's not achieved, because the other piece... Well, but attempts are covered. You're not saying the attempts aren't covered. No, I'm not saying that attempts are not covered. But this is not the sort of case that rises to the level of N'Duribi and Porter and Gonzalez. And the other cases in which people have actually left have been on the run for some period of time and have taken concrete steps in advance to prepare their flight. I see. All right. Did you have a question, Judge Roper? No. Thank you. And I'm sorry about, you know, the time lapses. If the authorities hadn't discovered him before the flight took off, surely you would concede that his departure, and he would have departed with the one-way ticket, it would have significantly impeded the investigation and the prosecution. And don't we have to look at that? Well, Judge, I don't think we should be sentencing people to six to eight years of additional prison based on something that didn't actually happen. And I don't agree that that would have happened, because the DEA and ATF and all are very active presences in Mexico City. He was traveling under his own name. It would have been a fairly easy thing for him to have been apprehended. But that aside, if you are prosecuted for impeding a criminal investigation, the statute of limitations is five years. I mean, the maximum penalty is five years. And in this case, he was given an extra 80 months for something that didn't, in fact, impede any investigation. The investigation was done. It didn't impede his prosecution, because they grabbed him quite quickly. And so the punishment is excessive, both in comparison to what would have happened to him if he had been prosecuted for it, and in comparison to what actually did happen in this case. It doesn't matter if his try was unsuccessful. That doesn't matter. Good police work. He was apprehended quickly, in contrast to the cases in which someone has been able to evade authority for years. Which puts him closer to the Application Note 5, which is specifically why flights to avoid arrest or attempts to avoid arrest are not given the obstruction. So I think that either way you look at it, what he attempted to do was foiled, and the steps that he took don't rise to the level of actual attempted or obstruction. Okay. Thank you very much, Ms. Gambino. Thank you, Your Honor. Ms. Kastanek. Good morning. May it please the Court. Andriana Kastanek on behalf of the United States. The District Court did not clearly err in assessing the two-point obstruction of justice enhancement, given the facts that show willful evasion of prosecution. Judge Wood, you are correct that he is illegal here in the United States. That's reflected on page 3 of the pre-sentence investigation report. As a routine matter, probation checks immigration status as they're doing the background investigation. He was found to not have citizenship in the United States, to have no status here. I do not know what his wife's status is in the United States. However, when he changed his plea, when he entered his blind plea, he was advised that he would be deported from the United States. There was discussion at the sentencing hearing on page 20 of the sentencing transcript about the fact that he planned to return to Mexico, given his lack of legal status, that his family and his children would join him there, and that he would seek additional opportunities in Mexico. The facts of his flight... Would it have made a difference if he aborted a flight to Milwaukee instead of to Mexico? Under the balance of factors here, if it was a one-way ticket to attempt to evade prosecution, I don't think it would have. I do think it's significant, however, that he was going to return to Mexico on a one-way ticket, not a vacation. He had a substantial amount of cash with him. I believe it was $2,056. He had a very small amount of belongings with him, indicating he left in a pretty substantial hurry without his family members accompanying him. It came a day after he was told by federal agents about the scope of the federal investigation, as well as the pending arrest that they were anticipating. He was told, as the defendant agrees and represents in his own sentencing memo, that was filed by the district court, that he understood that he was in lots of trouble. He was going to be indicted federally, and his choice was to cooperate or not. Given those facts and the specific circumstances of his attempt to depart the United States, it was not clear error for the district court to find that that was a willful attempt to leave the United States, and it wasn't just panicked flight. It does not matter that the agents were good enough investigators that they managed to show up at the airport and stop him from boarding that flight. It doesn't matter that there was not an impact or substantial impact on the prosecution. This court repeatedly has said that it does not look at the impact on the prosecution when evaluating willful intent to evade prosecution. For all of those reasons... Can you just tell me, just for my own edification, they caught him, what, in the waiting area? You know, some of the briefing says on the plane. Some of it says in the airport. Where was it? I believe he was on the jetway, so it's the pathway between the gate at the airport and on the airplane itself. He was waiting to board the plane on that jetway. So you've already cleared everything by the time you're on the jetway. He would have cleared security. He would have presented a boarding pass, that one-way ticket. He was about to board that plane when the agents entered the jetway and arrested him. Now, we've criticized in the past the difference between panicked or, you know, and more deliberate flight, because people often do things, you know, with panic, but they mean to do it anyway. So what is the distinction between the type of flight that notwithstanding Application Note 5 can count and the type of flight that falls within Application Note 5? I think this court has distinguished it on the basis of deliberateness, whether there is a plan in place that indicates that the person acted with actual intent. So the person who sees the police and starts running off down the street or grabs a car and zooms off is acting deliberately, aren't they? Sure. I think that this court's case law, including Gonzalez, has said that that can be characterized as instinctive, and what the court wants to distinguish between is that instinctive reaction and something that indicates that they understand that they have the possibility of charges forthcoming, and they are actually trying to remove themselves from the jurisdiction, from the ability for the government to prosecute them. Of course, even the guy who runs across and jumps over a few backyard fences is trying to impede the ability of the government to prosecute him, right? He's hoping he's going to lose the police. Right, but I think that in Gonzalez, what the court talks about is focusing on the conduct. One of them has a substantial ability to hinder law enforcement, and that's the flight that is deliberate and calculated, as opposed to an instinctive flight where the police are getting chased, but ultimately typically are able to catch that individual, and that's reflected in what happened in the laundromat in this case. The defendant saw the police. He had this instinctive reaction and threw his drugs. He turned back and went back inside of the laundromat, and the police gave chase and took him under apprehension, but that's substantially different as a factual matter in terms of its potential to interfere with law enforcement from the type of deliberate calculated offense that we're talking about here, where he actually is leaving the country in a manner in which it would be very difficult to get him back to face the prosecution. If there are no further questions, the government asks that the court affirm the defendant's sentence. Alright, thank you very much. Your time has expired, Ms. Gambino. If you have 30 seconds worth to say, we will hear you. Two points. First of all, the court has said that it's a matter of conduct plus, and it's not as elaborate, pertinacious, or causing some kind of harm as in going on a high-speed chase. And secondly, I did not address the fact that even in view of this, under this court's case law, the district court erred in not giving him acceptance of responsibility even though this event had occurred. So we would ask that the district court's decision be overturned. Alright, thank you very much. Thanks to both counsel. We'll take the case under advisement. The court will be in recess.